IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |  |
|---|---|---|
| | : | |
| | : | |
| | : | |
| IN RE: EQUIFAX FAIR CREDIT | : | CIVIL ACTION NO. |
| REPORTING ACT LITIGATION | : | 1:22-cv-03072-LMM |
| | : | |
| | : | |
| | : | |

## ORDER

This matter is presently before the Court on motions to dismiss certain

claims and to strike class allegations, both filed by Defendants Equifax, Inc., and

Equifax Information Services, LLC. Dkt. No. [93]. After due consideration, the

Court enters the following Order.

## I.    BACKGROUND

For a three-week period in the spring of 2022—March 17 through April 6—

Defendants misreported credit information on millions of consumers.[1] Dkt.

No. [79] ¶¶ 1, 3. The named plaintiffs in this consolidated action are consumers

who applied for loans during that period, and, because of Defendants' reporting

of artificially depressed credit scores, were denied credit, forced to pay inflated

interest rates, and/or required to have a co-signer. Id. ¶¶ 21-56. Plaintiffs assert

claims for common-law negligence and for negligent and willful violations of the

---

[1]    The Court presumes for the purposes of this Order that the well-pleaded allegations set forth in the consolidated complaint (hereinafter, "the complaint"), Dkt. No. [79], are true and construes them in the light most favorable to Plaintiffs.

Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., for themselves and on behalf of all others in the United States "about whom Equifax reported inaccurate items of information to a third party as a result of the coding error that Equifax claims caused [the] inaccurate reporting." Id. ¶¶ 88, 100-10, 112-17, 119-25.

Defendants seek dismissal of the common-law negligence claim and the claim for willful violation of the FCRA, and they move to strike the class-action negligence allegations. Dkt. No. [93]. The Court enters this Order with the benefit of full briefing and oral argument. See Dkt. Nos. [93-1, 96, 99, 102, 103, 110-16].

## II.    DISCUSSION

The FCRA was enacted "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 52 (2007) (citing 15 U.S.C. § 1681; see also Equifax Inc. v. F.T.C., 678 F.2d 1047, 1048 (11th Cir. 1982) ("The stated purpose of the FCRA is to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report.") (footnote and internal quotation marks omitted). The FCRA requires, among other things, that "[w]henever a consumer reporting agency [("CRA")] prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

The FCRA provides for both negligent violations of the FCRA, which entitle the consumer to actual damages (15 U.S.C. § 1681o(a)), and willful violations of

the FCRA, which may entitle the consumer to actual damages or statutory damages and even punitive damages (15 U.S.C. § 1681n(a)). See Safeco, 551 U.S. at 53. To establish a violation of § 1681e, the plaintiff must make a threshold showing that the information the CRA reported was inaccurate or misleading. Erickson v. First Advantage Background Servs. Corp., 981 F.3d 1246, 1251-52 (11th Cir. 2020) (holding that the Act must be read "to require that a report be both technically accurate and not misleading"). To recover on a claim for negligent violation of § 1681e(b), a plaintiff must also prove that: (a) the CRA failed to follow reasonable procedures to ensure the maximum possible accuracy of its consumer reports, and (b) he or she suffered an injury caused by this negligence. Id. at 1251. To prove a willful violation of § 1681e(b), the consumer must additionally "prove that a consumer reporting agency either knowingly or recklessly violated the requirements of the Act." Levine v. World Fin. Network Nat'l Bank, 554 F.3d 1314, 1318 (11th Cir. 2009); accord Safeco, 551 U.S. at 56-60.

In their motion, Defendants first argue that Plaintiffs' claim for willful violation of the FCRA fails because Defendants were not "objectively unreasonable" in interpreting § 1681e(b) not to apply to credit reports and because the facts underlying Plaintiffs' claims show that, at most, the deficient reporting resulted from a mistake rather than willful conduct. Dkt. No. [93-1] at 13-14, 20-35.[2] Second, Defendants contend that the class allegations of

---

[2]    Where a document's original page numbering conflicts with the numbering assigned by the Court's electronic filing system, the Court will cite the page numbers assigned by its filing system.

negligent violation of the FCRA and common-law negligence should be stricken because Plaintiffs seek actual damages, which will require highly individualized and disparate evidence. Id. at 14, 35-39. Third, Defendants argue that the state-law negligence claim is preempted by the FCRA and that, in any event, the claim should be dismissed because Plaintiffs cannot identify a statutory or common-law duty that Defendants breached. Id. at 14, 39-44. Fourth, Defendants aver that the claims asserted against Equifax, Inc., should be dismissed because Equifax, Inc., is not a "consumer reporting agency" subject to the FCRA. Id. at 14, 44-46. Fifth, Defendants contend that the claims for injunctive relief fail because Plaintiffs lack standing to pursue injunctive relief, injunctive relief is unavailable under the FCRA, and Plaintiffs have failed to plead facts showing that they are entitled to it. Id. at 15, 46-51. The Court will first address the arguments for dismissal and then will consider the arguments for striking the class claims.

### A.    MOTION TO DISMISS

#### *1.*    Legal Standard

Defendants move to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. No. [93-1] at 19. Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While this pleading standard does not require "detailed factual allegations," the Supreme Court has held that " 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " Ashcroft v.

Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Id. (quoting Twombly, 550 U.S. at 570). A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. Id. (citing Twombly, 550 U.S. at 556).

At the motion to dismiss stage, " 'all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff.' " FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting Garfield v. NDC Health Corp., 466 F.3d 1255, 1261 (11th Cir. 2006)). However, this principle does not apply to legal conclusions set forth in the complaint. Iqbal, 556 U.S. at 678.

### 2. Allegation that Equifax, Inc., is a CRA

Because it presents a threshold issue as to Defendant Equifax, Inc.'s liability under the FCRA, the Court first considers Defendants' contention that the FCRA does not apply to Defendant Equifax, Inc., because it is not a "consumer reporting agency" or "CRA" within the context of the FCRA. The Court finds this argument premature.

According to the FCRA, the term "consumer reporting agency" is defined as "any person which, for monetary fees . . . , regularly engages . . . in the practice of assembling or evaluating consumer credit information or other information on

consumers for the purpose of furnishing consumer reports to third parties . . . ."
15 U.S.C. § 1681a(f). Defendants argue that Equifax, Inc., should be dismissed
from this action because Plaintiffs make only conclusory allegations that Equifax,
Inc., is a consumer reporting agency, Dkt. No. [93-1] at 45 (citing Dkt. No. [79]
¶ 19), and numerous courts have held otherwise, id. (citing Martinez v. Equifax
Inc., Civ. Action No. 15-2100 (SRC), 2016 WL 226639, at *1 (D.N.J. Jan. 19,
2016); Greear v. Equifax, Inc., No. 13-11896, 2014 WL 1378777, at *1 (E.D. Mich.
Apr. 8, 2014); Ransom v. Equifax, Inc., No. 09-80280-CIV, 2010 WL 1258084,
at *3 (S.D. Fla. Mar. 30, 2010)).

　　The Court is not persuaded that the claims against Equifax, Inc., are due to
be dismissed on these grounds. A court may not treat a fact as established where,
as here, the party against whom it is to be used was not a party to the prior suit
and "has not had a full and fair opportunity to litigate the claims and issues
settled in that suit." Sellers v. Nationwide Mut. Fire Ins. Co., 968 F.3d 1267, 1272
(11th Cir. 2020) (internal quotation marks omitted). Indeed, in Martinez, the
plaintiff did not file any opposition to that portion of Equifax, Inc.'s motion to
dismiss. See Martinez, 2016 WL 226639 at *1. It therefore stands to reason that
Plaintiffs should not be bound by facts found in cases they had no opportunity to
litigate.

　　Additionally, Plaintiffs have asserted facts that, taken as true and
construed in the light most favorable to them, establish that both defendants are
CRAs. The complaint refers to Equifax, Inc., and Equifax Information Services,

LLC, collectively as "Equifax," Dkt. No. [79] at 1 n.1, and alleges that "Equifax monitors, collects, and assesses a diverse array of information on consumers. Using this information, it publishes and sells credit reports and credit scores for individual consumers . . . ," id. ¶ 57. These factual allegations track with the FCRA's definition of a CRA. As a result, the Court finds that the pleadings plausibly allege that Equifax, Inc., either on its own, or in conjunction with Equifax Information Services, LLC, is a CRA. If Equifax, Inc., has evidence that would refute these allegations, it may file a motion for summary judgment.

### *3.*    **Willful Violation of § 1681e(b)**

The Court next turns to the arguments for dismissal of the claim for willful violation of 15 U.S.C. § 1681e(b). Plaintiffs assert that Defendants willfully violated § 1681e(b) by failing to identify, adopt, maintain, and monitor reasonable procedures to ensure the maximum possible accuracy of Plaintiffs' and the putative class members' credit information. Dkt. No. [79] ¶¶ 105, 107, 108. More specifically, they contend that Defendants violated § 1681e(b) by failing to retire legacy systems and transfer their functions in a way that reduces risks to the integrity of the data that they hold; failing to implement monitoring systems to catch inaccuracies in credit information; failing to adequately test computer code before it is deployed in a production environment; failing to assess the risks of using code that could result in inaccurate credit information being sent to third parties; failing to promptly correct reporting errors rather than permitting inaccuracies to be continuously disseminated for three weeks;

and disregarding that their information-verification measures were inadequate and unreasonable. Id.

Defendants argue two grounds for dismissing the claims for willful violation of § 1681e(b). Dkt. No. [93-1] at 20-35. First, they contend that the claims should be dismissed because Defendants can be held to have willfully disregarded a duty under § 1681e(b) only if it was objectively unreasonable to interpret § 1681e(b) as inapplicable to credit scores and that the interpretation is not objectively unreasonable as a matter of law. Id. at 20-30. Second, they aver that the claims fail because the artificially reduced credit scores were the result of a simple human error rather than a willful violation of the FCRA. Id. at 20, 30-35.

*Objectively Unreasonable Interpretation of § 1681e(b)*

Defendants argue that a plaintiff cannot plead a willful violation of the FCRA where the defendant's interpretation of its statutory duty is not "objectively unreasonable." Dkt. No. [93-1] at 20-30. Defendants contend that the Supreme Court has set a "high standard" for plaintiffs seeking to show a willful violation of the FCRA that is akin to qualified immunity; that Plaintiffs therefore must show that Defendants were not merely careless in interpreting the FCRA but instead ran a "substantially greater" risk of violating the law; and that Plaintiffs must make that showing by demonstrating that the statutory text or "authoritative guidance" from a court of appeals or administrative agency "clearly establishes" that the challenged conduct was illegal at the time it was committed. Id. at 21-22 (internal quotation marks omitted; alterations adopted) (citing Safeco, 551 U.S. at 69-70; Berry v. Schulman, 807 F.3d 600, 605 (4th Cir. 2015); Fuges v. Sw. Fin.

Servs., 707 F.3d 241, 243, 249, 251 (3d Cir. 2012); Levine v. World Fin. Network

Nat'l Bank, 554 F.3d 1314, 1318 (11th Cir. 2009)). Defendants assert that

Plaintiffs cannot meet this burden because there is no authoritative guidance

from an agency or court of appeals establishing that § 1681e(b) applies to credit

scores; there is existing law holding that § 1681e(b) does not apply to credit

scores and instead only applies to credit reports; and the FCRA "plainly

distinguishes" between the two. Id. at 22-30.

The Court is not persuaded. As an initial matter, the Court finds that

Defendants overreach in arguing that they could not have acted knowingly or

recklessly absent "clearly established" law warning against their conduct. The

phrase "clearly established" appeared not in Safeco's holding but rather in an

explanatory parenthetical associated with authority appearing after a "cf." signal,

see Safeco, 551 U.S. at 70, which indicates merely that "[t]he authority is different

from the main proposition but sufficiently analogous to lend support," The

Bluebook: A Uniform System of Citation 5 (Columbia L. Rev. Ass'n et al. eds., 21st

ed. 2020). Myriad courts applying Safeco—including authority relied upon by

Defendants—have interpreted Safeco not to foreclose potential liability for

intentional violation of the FCRA even where there is no administrative or

appellate guidance. See, e.g., Syed v. M-I, LLC, 853 F.3d 492, 504 (9th Cir. 2017);

Fuges, 707 F.3d at 253 n.21; Cortez v. Trans Union, LLC, 617 F.3d 688, 721

(3d Cir. 2010); Lengel v. HomeAdvisor, Inc., 102 F. Supp. 3d 1202, 1211 (D. Kan.

2015) (collecting cases). The absence of "clearly established" precedent therefore does not foreclose Plaintiffs' claims for willful violation of § 1681e(b).

Second, the cases Defendants cite for the proposition that § 1681e(b) does not apply to credit scores are distinguishable. In those cases, as Defendants concede, the plaintiffs' claims arose from the theory that *correctly* reported credit scores (in essence, numerical values representing professional judgment about the value and prospects of consumers' creditworthiness) were misleading. See Dkt. No. [93-1] at 23-26. Here, in contrast, Plaintiffs are not challenging professional judgments about their creditworthiness; rather, they are challenging unreasonable data-management procedures that undermined the factual foundations of those judgments and consequently rendered the numerical representations of those judgments—i.e., the reported credit scores—invalid. Moreover, Plaintiffs also allege that Defendants' misreporting included not only artificially depressed credit scores, but also inaccurate credit information, including "number of inquiries within one month" and "age of oldest tradeline."[3]

---

[3]    The Court is aware that Defendants take issue with the allegations pertaining to the number of inquiries within one month and the age of the oldest tradeline because documents Plaintiffs cite in the complaint to support the allegations purportedly "make clear that 'no underlying credit data' was affected by the alleged coding issue." Dkt. No. [99] at 16. Reference to the cited documents reveals, however, that they merely contain Equifax's assertions that no underlying credit data was affected by the alleged coding issue. See Equifax, Equifax Statement on Recent Coding Issue (August 2, 2022), bit.ly/3YwltTd (last visited June 7, 2023) (Equifax press release); Steve Goode, Equifax Telling Lenders of Potential Errors in Credit Scores, Nat'l Mortg. Prof'l (May 27, 2022), bit.ly/3nJUmqj (last visited June 6, 2023) (emphasis added) (news article noting that "Equifax claims that no underlying credit data was affected . . . ." (emphasis

Dkt. No. [79] ¶¶ 61, 64. The Court is therefore not persuaded that authority

holding that credit scores based on *accurate* information are opinions falling

outside the purview of § 1681e(b) are a bar to Plaintiffs' willfulness claims here.

The Court also is not persuaded by Defendants' argument that the plain

text and structure of the FCRA show that it is not objectively unreasonable to

read § 1681e(b) as inapplicable to credit scores. See Dkt. No. [93-1] at 27-30. As

Plaintiffs point out, the FCRA broadly defines "consumer report" as "any written,

oral, or other communication of any information by a [CRA] bearing on a

consumer's credit worthiness, credit standing, [or] credit capacity . . . which is

used or expected to be used . . . as a factor in establishing the consumer's

eligibility for [] credit . . . ." 15 U.S.C. § 1681a(d)(1). FTC guidance also provides

that the "the term 'consumer report' includes numerical or other evaluation of

data by a CRA, such as a credit score that bears on a consumer's

creditworthiness." FTC Staff Rpt., 40 Years of Experience with the Fair Credit

Reporting Act, 2011 WL 3020575, at *14 (July 2011). While Defendants cite other

portions of the FRCA that refer separately to a "consumer report" and a "credit

score," those statutes do not conflict with § 1681a(d)(1)'s plain indication that a

credit score is part of a consumer report. See 15 U.S.C. § 1681c-1(h)(2)(B);

15 U.S.C. § 1681g(f)(9). The article Defendants proffer from the website of the

Consumer Financial Protection Bureau ("CFPB") that explains the difference

---

added)). Such factual disputes have no place in the adjudication of a motion to

dismiss. See supra Part II.A.1.

between a "credit report" and a "credit score," Dkt. No. [93-1] at 30 n.5, is also irrelevant, since § 1681e(b) requires maximum possible accuracy in *consumer reports*, not credit reports, 15 U.S.C. § 1681e(b). And the logic web Defendants weave in an attempt to equate the terms "consumer report" and "consumer file" and then distinguish "credit file" from "credit score" is just not persuasive. And, in any event, Plaintiffs' allegations relate not only to inaccurate credit scores but also to inaccuracies in data elements underlying the scores, such as "number of inquiries within one month" and "age of oldest tradeline," which undisputedly are attributes included in credit reports. Dkt. No. [79] ¶¶ 61, 64.

For all of these reasons, the Court concludes that the claims for willful violation of the FCRA are not due to be dismissed on these grounds.

### *Factual Allegations Showing Willful Violation of the FCRA*

Defendants argue that even if their interpretation of the FCRA was objectively unreasonable, Plaintiffs' willfulness claims still fail because they have alleged "at most[,] a one-off, inadvertent, and unexpected human error" rather than knowing or reckless conduct. Dkt. No. [93-1] at 31-33. Defendants additionally argue that factual assertions in the complaint—particularly, Plaintiffs' acknowledgment that the coding issue giving rise to Plaintiffs' claims was a mistake made by their technology team and that Defendants were proactively replacing their legacy systems—undermine Plaintiffs' theory that Defendants acted recklessly by ignoring risks arising from their use of legacy systems. Id. at 33-35 (citing Dkt. No. [79] ¶¶ 63, 78-80 & n.18). Defendants also fault the complaint because it does not contain the phrase "custom computer

code," and they contend that Plaintiffs' assertions regarding the lack of testing or monitoring are too conclusory. Dkt. No. [99] at 22.

On the contrary, the Court finds Plaintiffs' allegations sufficient to survive the motion to dismiss, as the complaint alleges that it was reckless for Defendants to use legacy systems that it knew were antiquated and error-prone, thereby increasing the risk of error by making it necessary to write custom computer code to enable the out-of-date systems to perform their functions in a modern network, and compounding the error with testing and monitoring that Defendants knew or should have known was inadequate. See Dkt. No. [79] ¶¶ 4, 62, 63, 78-82, 105, 108, 114. The fact that Defendants were replacing their legacy systems only reinforces Plaintiffs' allegations that Defendants knew the systems were out of date. See id. ¶¶ 78-80. Additionally, the complaint refers to Defendants' having "written . . . computer code," which strikes the Court as synonymous with "custom computer code," see Dkt. No. [79] ¶ 4, and it states that Defendants admitted needing to replace their system with a new cloud environment that would provide additional controls and monitoring that would help to detect and prevent future issues like those giving rise to this lawsuit, id. ¶ 80.

For these reasons, the Court finds that Plaintiffs' claims for willful violation of the FCRA are pleaded sufficiently to warrant further development through discovery.

### *4.*    **State-Law Negligence Claim**

Plaintiffs assert a state-law negligence claim in which they allege that Defendants owed a duty to them and the putative class to use reasonable care in adopting procedures to ensure the maximum possible accuracy of the consumer credit they furnish lenders; that Defendants breached the duty by failing to adopt, maintain, and monitor reasonable procedures to ensure such accuracy; that as a result of their negligence, Defendants reported inaccurate credit information on Plaintiffs and the putative class members to third parties; and that Plaintiffs and the putative class members were consequently denied loans or received less-favorable terms on loans. Dkt. No. [79] ¶¶ 119-25. Defendants argue that the state-law negligence claim is preempted by the FCRA and that, in any event, there is neither a statute nor common law establishing that Defendants owed Plaintiffs such a duty. Dkt. No. [93] at 14, 39-44; Dkt. No. [99] at 25-28; Dkt. No. [103]; Dkt. No. [112] at 6-10; Dkt. No. [114].

*Preemption*

The Court finds Defendants' preemption argument wanting. Defendants contend that the common-law negligence claim is preempted under 15 U.S.C. § 1681h(e). Dkt. No. [93-1] at 39-41. Section 1681h(e) provides that

> [e]xcept as provided in sections 1681n and 1681*o* of this title, no consumer may bring any action or proceeding in the nature of . . . negligence with respect to the reporting of information against any [CRA] . . . based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

14

15 U.S.C. § 1681h(e). Thus, according to the plain language of § 1681h(e), the heightened "malice" or "willful intent" standard applies to actions based on disclosures made pursuant to 15 U.S.C. § 1681g, 1681h, or 1681m, or actions based on disclosures "by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report." Jordan v. Trans Union LLC, 377 F. Supp. 2d 1307, 1309 (N.D. Ga. 2005).

Defendants do not explain how Plaintiffs' negligence claim falls within the statute. See Dkt. No. [93-1] at 39-41. Instead, they presume that it does and simply argue that Plaintiffs have failed to adequately allege malice or willful intent. See id. In their reply brief, Defendants also do not acknowledge any of the opinions in which judges of this district parsed the text of the statute, and they instead cite a single, unpublished report and recommendation that relies exclusively on a district-court opinion that summarily held that § 1681h(e) bars all defamation and negligent-reporting claims brought pursuant to state law unless the plaintiff can prove that the defendant acted with malice or with a willful intent to injure him. See Dkt. No. [99] at 25 (citing Ponder v. Experian Info. Sols., Inc., Civ. Action No. 1:19-CV-5494-CAP-JSA, 2021 WL 2688648, at *22 (N.D. Ga. May 18, 2021) (R&R) (citing Jordan v. Equifax Info. Servs., LLC, 410 F. Supp. 2d 1349, 1355 (N.D. Ga. 2006)).

Plaintiffs' negligence claim is not based on information disclosed pursuant to § 1681g, § 1681h, or § 1681m, as those statutes all pertain to disclosures that must be made to consumers, nor is the claim based on a disclosure made by "a

user of a consumer report." See Johnson v. Citimortgage, Inc., 351 F. Supp. 2d 1368, 1376-77, 1380 (N.D. Ga. 2004) (finding no preemption under § 1681h(e) because the claimed negligence did not pertain to a disclosure made under §§ 1681g, 1681h, or 1681m; there was no adverse action; and the claim was premised not just on negligent disclosure of information but also of the negligent maintenance, accounting, and servicing of loan account); see also Pinckney v. SLM Fin. Corp., 433 F. Supp. 2d 1316, 1321-22 (N.D. Ga. 2005) (holding that § 1681h(e) did not apply to claims for violation of duty to investigate disputed information and report the results). Accordingly, the Court is not persuaded that § 1681h(e) precludes Plaintiffs' negligence claim.

Moreover, even if § 1681h(e) did apply, the pleadings are sufficient to survive the motion to dismiss. According to Defendants, the malice requirement may be satisfied by a showing that a statement was made "with reckless disregard of whether it was false or not," Dkt. No. [93-1] at 39-40, and as the Court explained above, the amended complaint adequately pleads recklessness. See supra Part II.A.3. Thus, the preemption argument also fails on this basis.

### Statutory or Common-Law Duty

" 'It is well established that to recover for injuries caused by another's negligence, a plaintiff must show four elements: a duty, a breach of that duty, causation, and damages.' " Collins v. Athens Orthopedic Clinic, P.A., 837 S.E.2d 310, 312 (Ga. 2019) (alteration adopted) (quoting Goldstein, Garber & Salama, LLC v. J.B., 797 S.E.2d 87 (Ga. 2017)). The existence of a legal duty is a question

of law for the court. <u>Ga. CVS Pharm., LLC v. Carmichael</u>, 890 S.E.2d 209, 221 (Ga. 2023).

In the face of Defendants' contention that Plaintiffs failed to allege a recognized statutory or common-law duty of care that Defendants breached, Plaintiffs do not argue that Defendants owed them a statutory duty of care but instead suggest that Defendants owed them the alleged duty of care under Georgia common law. Dkt. No. [96] at 38-41. Plaintiffs acknowledge that under <u>Department of Labor v. McConnell</u>, 828 S.E.2d 352 (Ga. 2019), there is no common-law duty to all the world not to subject others to an unreasonable risk of harm. Dkt. No. [96] at 39. However, they argue that creation of a risk of a foreseeable harm is nevertheless enough to create a legal duty of care pursuant to the Eleventh Circuit's holding in <u>Ramirez v. Paradies Shops, LLC</u>, 69 F.4th 1213 (11th Cir. 2023), this Court's opinion in <u>Purvis v. Aveanna Healthcare, LLC</u>, 563 F. Supp. 3d 1360, 1366-69 (N.D. Ga. 2021), the opinions of other judges in this district in <u>Parris v. 3M Company</u>, 595 F. Supp. 3d 1288, 1329-30 (N.D. Ga. 2022) and <u>Tracy v. Elekta, Inc.</u>, Civ. Action No. 1:21-cv-2851-SDG, ___ F. Supp. 3d ___, 2023 WL 4677021 (N.D. Ga. Mar. 31, 2023), and the opinion of the Supreme Court of Georgia in <u>Georgia CVS Pharmacy, LLC v. Carmichael</u>. Dkt. No. [96] at 38-41; Dkt. Nos. [102, 111, 113, 115].

Given the state of Georgia law, the question of whether Defendants owed Plaintiffs any duty of care is a thorny one. As Defendants correctly point out, the Georgia Supreme Court has held that mere foreseeability of a potential harm is

not enough to establish a duty of care. Dkt. No. [93-1] at 44 (citing CSX Transp., Inc. v. Williams, 608 S.E.2d 208, 209-10 (Ga. 2005)). The Eleventh Circuit recognized this limitation in Ramirez, finding the employer-employee relationship "significant" in establishing a duty of care. See Ramirez, 69 F.4th at 1219-20. Neither Purvis, Parris, Tracy, nor Carmichael grapple with the CSX holding; Plaintiffs merely argue by assertion that CSX is materially distinguishable from the case at hand, see Dkt. No. [96] at 40 n.10; and when directly asked at oral argument to articulate Defendants' duty to the plaintiffs in this case, Plaintiffs' counsel could describe the putative duty only as "foreseeability plus . . . something akin to undertaking," which she conceded could not form the basis for a duty under Georgia law because there are no allegations in this case of physical harm, Dkt. No. [110] at 48-49. See also Willingham v. Global Payments, Inc., No. 1:12-CV-01157-RWS, 2013 WL 440702, at *17-19 (N.D. Ga. Feb. 5, 2013) (dismissing negligence claim for failure to establish duty of care, holding, among other things, that Georgia's "voluntary undertaking doctrine" is limited to claims for physical harm); Huggins v. Aetna Casualty & Surety Co., 264 S.E.2d 191, 192 (Ga. 1980) (adopting Restatement 2d Torts § 324A: "Liability to Third Person for Negligent Performance of Undertaking," which provides for third-party liability for certain physical harm). It also bears noting that Tracy and Purvis are distinguishable because they involved direct relationships (patient-healthcare provider and employer-employee) between the parties, where the plaintiffs had entrusted the defendants

with personal information that the defendants subsequently allowed to be breached, Tracy, Civ. Action No. 1:21-cv-2851-SDG, ECF No. 61 at 2-3; Purvis, 563 F. Supp. 3d at 1365; that Parris is distinguishable because the court found that the defendants owed a duty of care under § 389 of the Second Restatement of Torts, as the supplier of a product known to be hazardous, Parris, 595 F. Supp. 3d at 1328-30; and that Carmichael is distinguishable because the duty of care was based on the proprietor-invitee relationship, Carmichael, 890 S.E.2d at 220. Absent a clear articulation of the new common-law duty Plaintiffs seek, the Court finds it improvident to create one. It is Plaintiffs' burden to plead and articulate the duty they seek and explain its basis in law. They have not met this burden here. Instead, Georgia law forecloses recovery on the grounds Plaintiffs assert.

For these reasons, the Court concludes that Defendants' motion to dismiss is due to be granted as to the negligence claim asserted under Georgia law. To the extent that Plaintiffs' claims for injunctive relief are grounded in the state-law negligence claim, see Dkt. No. [96] at 46, 50, Defendants' motion will be granted as to those claims as well.

### 5. Injunctive Relief

In addition to damages, attorneys' fees, and costs of litigation, Plaintiffs also demand injunctive relief in the form of an Order requiring Defendants to "(i) implement new protocols, procedures, and practices that will ensure no further harm to consumers, (ii) disgorge [their] gross revenues and profits derived from [their] furnishing of inaccurate consumer reports, (iii) and inform each affected consumer that their information was misreported, what

information about them was misreported, and to what entities it was misreported." Dkt. No. [79] at 39. Defendants contend that the claims for injunctive relief fail because Plaintiffs have not pleaded facts establishing that they have standing to seek injunctive relief, because injunctive relief is not available under the FCRA, and because Plaintiffs cannot show that their remedies at law are inadequate or that they will suffer irreparable harm absent an injunction. Dkt. No. [93-1] at 46-51.

The Court agrees with Defendants that injunctive relief is not available to Plaintiffs under the FCRA. Plaintiffs argue that because the FCRA does not expressly prohibit injunctive relief for private litigants, courts may award it. Dkt. No. [96] at 45-46. They acknowledge that there is no binding authority in the Eleventh Circuit and cite several district court cases that they contend demonstrate that district courts are split on the issue. Id. (citing Andrews v. Trans Union Corp., 7 F. Supp. 2d 1056, 1084 (C.D. Cal. 1998); Greenway v. Info. Dynamics, Ltd., 399 F. Supp. 1092, 1096-97 (D. Ariz. 1974); Murray v. E*Trade Fin. Corp., No. 05 C 5433, 2006 WL 2054381, at *4 (N.D. Ill. July 19, 2006)).

The cases cited by Plaintiffs are few and contain little to no analysis, however. Furthermore, Plaintiffs fail to acknowledge that district courts in the Eleventh Circuit have thoroughly considered the issue and consistently held that equitable relief is not generally available to private citizens under the FCRA, as has the Fifth Circuit, the only circuit to have decided the issue. See, e.g., Washington v. CSC Credit Servs., Inc., 199 F.3d 263, 268-69 (5th Cir. 2000);

Witter v. FIA Card Servs., N.A., Civ. Action File No. 1:09-CV-02270-CAM-AJB, 2009 WL 10712157, at *2-3 (N.D. Ga. Oct. 7, 2009) (R&R) (additionally noting that "the majority of courts, not only in this Circuit but in all federal circuits, have determined that injunctive relief is not available to private parties"), adopted at 2009 WL 10712158 (N.D. Ga. Oct. 29, 2009); see also Nazaire v. Deutsche Bank Nat'l Tr. Co., Civ. Action No. 1:20-cv-0979-AT, 2020 WL 10227649, at *2 (N.D. Ga. Mar. 13, 2020) (" '[E]very district court within the circuit has found such relief unavailable' "); Peterson v. Experian Inc., Civ. Action No. 1:16-CV-3528-RWS, 2017 WL 8219030, at *1 (N.D. Ga. May 17, 2017) (same).

   This Court finds those decisions to be well reasoned. As Plaintiffs correctly point out, "in general, '[a]bsent the clearest command to the contrary from Congress, federal courts retain their equitable power to issue injunctions in suits over which they have jurisdiction.' " Washington, 199 F.3d at 268 (quoting Califano v. Yamasaki, 442 U.S. 682, 705 (1979)); accord Amoco Prod. Co. v. Village of Gambell, Alaska, 480 U.S. 531, 542 (1987) (providing that "[u]nless a statute . . . , [] by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied" (internal quotation marks omitted)). Thus, as Plaintiffs contend, mere silence regarding injunctive relief for private litigants under the FCRA would not constitute a clear statement disallowing this Court's ability to provide injunctive relief. Rather, the Court "must consider whether Congress 'clearly and

unambiguously limited the court's equity jurisdiction' under the FCRA."
Washington, 199 F.3d at 268 (quoting Califano, id.).

It is true, as Plaintiffs point out, that there is no portion of the FCRA flatly stating that equitable relief is not available to a private litigant. However, as aptly discussed in Washington, the FCRA is not silent regarding the availability of injunctive relief: for one subset of private claims against the government, which is not asserted here, the FCRA expressly grants injunctive relief to consumers, see 15 U.S.C. §§ 1681u(n); otherwise it expressly grants the power to obtain injunctive relief to the FTC and certain other agencies, see 15 U.S.C. §§ 45(b), 1681s(a)(1), (b), and otherwise establishes federal-court jurisdiction over only actions to enforce liability for damages and attorney fees, without mentioning injunctive relief, see 15 U.S.C. §§ 1681n, 1681o, 1681p. Washington, 199 F.3d at 268-69. Under the principles of statutory construction, the affirmative grant of power to the FTC and other agencies to pursue injunctive relief and similar affirmative grant to private litigants to pursue injunctive relief from certain government conduct, contrasted with the affirmative grant to private litigants in other situations to pursue *other* relief, persuasively demonstrates that Congress did not grant private litigants general power to obtain injunctive relief under the FCRA. Id. at 268; accord Witter, 2009 WL 10712157 at *2-3.

For these reasons, the Court concludes that injunctive relief is not available on Plaintiffs' claims in this action. The motion to dismiss is therefore also **GRANTED** as to the demand for injunctive relief asserted under the FCRA.

### 6.    Motion to Strike Class Claims

Defendants also contend that the class allegations as to the claims for negligent violation of the FCRA should be stricken because Plaintiffs seek actual damages, which will require highly individualized and disparate evidence.[4] Dkt. No. [93] at 14; Dkt. No. [93-1] at 35-39. The Court does not agree.

"Dismissal at the pleading stage . . . is an extreme remedy appropriate only where a defendant demonstrates from the face of the complaint that it will be impossible to certify the classes alleged by the plaintiff regardless of the facts the plaintiff may be able to prove." Lawson v. Life of the S. Ins. Co., 286 F.R.D. 689, 695 (M.D. Ga. 2012) (punctuation omitted). "While it is sometimes possible to decide the propriety of class certification from the face of the complaint, the Supreme Court has emphasized that class certification is an evidentiary issue, and it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." Herrera v. JFK Med. Ctr. Ltd. P'ship, 648 F. App'x 930, 934 (11th Cir. Apr. 26, 2016) (punctuation and citations omitted). "In fact, the determination usually should be predicated on more information than the complaint itself affords. The court may, and often does, permit discovery relating to the issues involved in maintainability." Id. (internal quotation marks omitted).

---

[4]    Defendants also argue that the class allegations as to the claims for common-law negligence should be stricken. Because the Court has already determined that the common-law negligence claims are due to be dismissed, this portion of Defendants' motion to strike is moot.

Although Defendants insist that each plaintiff's claim requires individualized analysis, the Court finds that it would be premature to dismiss the class claims on the record that is presently before it. As discussed at oral argument, this appears to be a data-driven case, and discovery may well yield an electronic paper trail establishing cause and effect. The Court therefore finds that Defendants cannot at this stage of the litigation establish that it will be impossible for Plaintiffs to certify the class. Accordingly, the motion to strike the class claims, Dkt. No. [93], is **DENIED**.

## III.    CONCLUSION

In accordance with the foregoing, Defendants' motion to dismiss the consolidated class action complaint, Dkt. No. [93], is **GRANTED IN PART and DENIED IN PART**, and the motion to strike class action allegations, Dkt. No. [93], is **DENIED**. Accordingly, the common-law negligence claims (Third Claim) and demand for injunctive relief are **DISMISSED** and all other claims shall proceed.

**IT IS SO ORDERED** this 11th day of September, 2023.

**Leigh Martin May**
**United States District Judge**