IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: EQUIFAX FAIR CREDIT REPORTING ACT LITIGATION | : : : : : : : : : | CIVIL ACTION NO. 1:22-cv-03072-LMM-CCB |

# ORDER

This case comes before the Court on Defendants' motion to certify question for interlocutory appeal, Dkt. No. [127]; motion to dismiss the complaint for lack of subject-matter jurisdiction, Dkt. No. [180]; and motion to stay discovery, Dkt. No. [184]; the parties' joint status report setting forth their positions regarding a briefing schedule on the motion to dismiss, Dkt. No. [195]; and Plaintiffs' request for hearing on the motion to dismiss and motion to stay discovery. After due consideration, the Court enters the following Order.

**I.    BACKGROUND**

According to the amended complaint, Defendants misreported credit information on millions of consumers for three weeks spanning March 17, 2022, through April 6, 2022. Dkt. No. [79] ¶¶ 1, 3. The named plaintiffs in this consolidated action are consumers who allege that they applied for loans during that period, and, because of Defendants' reporting of artificially depressed credit scores, were denied credit, forced to pay inflated interest rates, and/or required

to have a co-signer. Id. ¶¶ 21-56. Plaintiffs assert claims for negligent and willful violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681e(b), for themselves and on behalf of all others in the United States "about whom Equifax reported inaccurate items of information to a third party as a result of the coding error that Equifax claims caused [the] inaccurate reporting." Id. ¶¶ 88, 100-10, 112-17.[1]

## II.    DISCUSSION

The FCRA was enacted "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 52 (2007) (citing 15 U.S.C. § 1681); see also Equifax Inc. v. F.T.C., 678 F.2d 1047, 1048 (11th Cir. 1982) ("The stated purpose of the FCRA is to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report.") (footnote and internal quotation marks omitted). The FCRA requires, among other things, that "[w]henever a consumer reporting agency [("CRA")] prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

The FCRA provides for both negligent violations of the FCRA, which entitle the consumer to actual damages (15 U.S.C. § 1681*o*(a)), and willful violations of

---

[1] Plaintiffs also asserted a claim for common-law negligence, Dkt. No. [79] ¶¶ 119-25, which was dismissed in a prior Order, along with Plaintiffs' demand for injunctive relief. Dkt. No. [121] at 16-22, 24.

the FCRA, which may entitle the consumer to actual damages or statutory damages and even punitive damages (15 U.S.C. § 1681n(a)). See Safeco, 551 U.S. at 53.

To establish a violation of § 1681e, the plaintiff must make a threshold showing that the information the CRA reported was inaccurate or misleading. Erickson v. First Advantage Background Servs. Corp., 981 F.3d 1246, 1251-52 (11th Cir. 2020) (holding that the Act must be read "to require that a report be both technically accurate and not misleading"). To recover on a claim for negligent violation of § 1681e(b), a plaintiff must also prove that: (a) the CRA failed to follow reasonable procedures to ensure the maximum possible accuracy of its consumer reports, and (b) he or she suffered an injury caused by this negligence. Id. at 1251. To prove a willful violation of § 1681e(b), the consumer must additionally "prove that a consumer reporting agency either knowingly or recklessly violated the requirements of the Act." Levine v. World Fin. Network Nat'l Bank, 554 F.3d 1314, 1318 (11th Cir. 2009); accord Safeco, 551 U.S. at 56-60.

### A. Motion to Certify Question for Interlocutory Appeal

Plaintiffs assert that Defendants willfully violated § 1681e(b) by failing to identify, adopt, maintain, and monitor reasonable procedures to ensure the maximum possible accuracy of Plaintiffs' and the putative class members' credit information. Dkt. No. [79] ¶¶ 105, 107, 108. Specifically, they contend that Defendants violated § 1681e(b) by failing to retire legacy systems and transfer their functions in a way that would have reduced risks to the integrity of the data

3

that they hold; failing to implement monitoring systems to catch inaccuracies in credit information; failing to adequately test computer code before it was deployed in a production environment; failing to assess the risks of using code that could result in inaccurate credit information being sent to third parties; failing to promptly correct reporting errors rather than permitting inaccuracies to be continuously disseminated for three weeks; and disregarding that their information-verification measures were inadequate and unreasonable. Id.

In a previous motion, Defendants moved to dismiss Plaintiffs' claims for willful violation of the FCRA on grounds that courts dismiss willfulness claims at the pleading stage when those claims are based on conduct that is not actionable under an objectively reasonable interpretation of the FCRA, and Defendants were not "objectively unreasonable" in interpreting § 1681e(b) to be inapplicable to credit scores. Dkt. No. [93-1] at 13, 20-30.[2] The Court rejected the argument and declined to dismiss the claims. Dkt. No. [121] at 8-12. Defendants now seek an order certifying the following question for interlocutory appeal under 28 U.S.C. § 1292(b):

> Whether it is "objectively unreasonable" under the Safeco standard to read § 1681e(b)'s "maximum possible accuracy" requirement as inapplicable to opinions such as credit scores, even if the opinion is based on incorrect facts or is not correctly stated?

Dkt. No. [127] at 4.

---

[2] Where a document's original page numbering conflicts with the numbering assigned by the Court's electronic filing system, the Court will cite the page numbers assigned by its filing system.

### *1.    Legal Standard*

A district court may certify an order for interlocutory appeal if the following three elements are met: (1) the subject order "involves a controlling question of law"; (2) there is "substantial ground for difference of opinion" on the controlling question of law; and (3) an immediate appeal from the subject order "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The appeal must present a "pure question of law," and the question must be identified in the district court's order. Drummond Co. v. Conrad & Scherer, LLP, 885 F.3d 1324, 1336 (11th Cir. 2018).

"A question of law is considered 'controlling' if it has the potential of substantially accelerating disposition of the litigation, even if it would not terminate the case." Ga. State Conf. of the NAACP v. Fayette Cnty. Bd. of Comm'rs, 952 F. Supp. 2d 1360, 1362 (N.D. Ga. 2013) (quotation marks omitted). The question is one "of law" if it is "stated at a high enough level of abstraction to lift the question out of the details of the evidence or facts of a particular case and give it general relevance to other cases in the same area of law." McFarlin v. Conseco Servs., LLC, 381 F.3d 1251, 1259 (11th Cir. 2004).

"The requirement that there be substantial ground for difference of opinion is satisfied when (1) the issue is difficult and of first impression, (2) a difference of opinion as to the issue exists within the controlling circuit, or (3) the circuits are split on the issue." Fayette Cnty., 952 F. Supp. 2d at 1362. The fact that the issue is one of first impression is not sufficient on its own. Id. "Instead, the

district court has a duty to analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is a substantial ground for dispute." Id. (quotation marks omitted).

In determining whether interlocutory appeal would materially advance the ultimate termination of the litigation, district courts consider whether resolution of the question "would serve to avoid a trial or otherwise substantially shorten the litigation." McFarlin, 381 F.3d at 1259.

"Certification for immediate appeal of a non-final order under § 1292(b) is an extraordinary measure, which is permitted only in exceptional circumstances." S. Pilot Ins. Co. v. CECS, Inc., 15 F. Supp. 3d 1335, 1336 (N.D. Ga. 2013); accord Caterpillar, Inc. v. Lewis, 519 U.S. 61, 74 (1996) (recognizing that interlocutory appeals are intended for " 'exceptional' cases" (quoting Coopers & Lybrand v. Livesay, 437 U.S. 463, 475 (1978), superseded by rule, in part, on other grounds, as stated in Microsoft Corp. v. Baker, 582 U.S. 23 (2017))). "The proper division of labor between the district courts and the court of appeals and the efficiency of judicial resolution of cases are protected by the final judgment rule, and are threatened by too expansive use of the § 1292(b) exception to it." McFarlin, 381 F.3d at 1259.

## 2. *Analysis*

The Court does not find that Defendants' proposed question presents substantial ground for difference of opinion. Thus, interlocutory review is inappropriate.

Again, to prove a willful violation of the FCRA, the consumer "must prove that a consumer reporting agency either knowingly or recklessly violated the requirements of the Act." Levine, 554 F.3d at 1318. To establish a reckless violation, the consumer must show that the CRA's conduct "is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." Safeco, 551 U.S. at 69. An interpretation that favors the CRA "must be 'objectively unreasonable' under either the text of the Act or 'guidance from the courts of appeals or the Federal Trade Commission that might have warned [the CRA] away from the view it took.' " Levine, 554 F.3d at 1318 (quoting Safeco, 551 U.S. at 69-70).

At its core, the question Defendants seek to certify is based on their insistence that a credit score is *only* an opinion and that a credit score therefore cannot be factually inaccurate "information" under § 1681e(b). That is a misconstruction of Plaintiffs' claims.

As an indicator of a consumer's creditworthiness, a credit score is an opinion. However, a credit score is also a scaled number that is generated when the data in an individual consumer's credit history file is fed into a statistical model. Plaintiffs are not challenging Defendants' opinions of their creditworthiness—in essence, the accuracy of the statistical model. Instead, they challenge Defendants' mishandling of the data fed into the statistical model and the effect of that mishandling on the reported credit scores.

7

The Court understands and agrees with the cases that find that it is not actionable to criticize how the underlying credit score algorithm determines creditworthiness, but Plaintiffs have not pled their claims in this way. Instead, Plaintiffs claim that Defendants have admitted that they made mistakes in the mechanics of calculating the credit score. At this point, prior to discovery, we are left with Plaintiffs' allegations of how this process was mishandled.

Properly framed by the way Plaintiffs have pled their claims, it is clear that the FCRA's requirement that a CRA "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates" applies here. Among the common uses of the word "information" is "*that which is obtained by the processing of data*." Information, Oxford English Dictionary (Sept. 2023 ed.), https://doi.org/10.1093/OED/1113906004 (emphasis added); accord Information, Merriam-Webster Collegiate Dictionary (accessed June 18, 2024), https://unabridged.merriam-webster.com/collegiate/information (defining "information" as "a quantitative measure of the content of information"). Thus, as a mechanically generated numerical result of the processing of objective data, a credit score is "information." It is therefore unreasonable to read the plain text of the Act as excepting the processing of credit scores from the "maximum possible accuracy" requirement. Although this issue has not been specifically addressed in the case law, the clear text of the statute necessitates the Court's finding.

The Court has thoroughly reviewed the prior order addressing these issues in light of the parties' briefing here and does not find that the exceptional grounds necessary to grant relief have been met. For these reasons, the motion to certify question for interlocutory appeal, Dkt. No. [127], is **DENIED**.

B. **Motion to Dismiss and Motion to Stay Discovery**

Defendants have filed a motion to dismiss this action for lack of subject-matter jurisdiction on grounds that Plaintiffs lack standing to assert their claims. Dkt. No. [180]. They contend that their motion is dispositive of the case and that the Court should therefore stay discovery, "with the exception of any limited discovery necessary to resolve the question of subject matter jurisdiction." Dkt. No. [184].

1. *Legal Standard*

Since Defendants do not state the rule under which they seek dismissal, the Court presumes that Defendants seek dismissal under Rule 12(b)(1) of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 12(b)(1) (providing for the defense of lack of subject-matter jurisdiction). A motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) may be based on a facial or factual challenge to the complaint. McElmurray v. Consol. Gov't of Augusta-Richmond Cnty., 501 F.3d 1244, 1251 (11th Cir. 2007) (citing Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir. May 1981)[3]). A facial attack "requires the

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the

court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction," and for purposes of the motion, the plaintiff's allegations in the complaint are taken as true. McElmurray, 501 F.3d at 1251 (quoting Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990)) (alterations adopted). To the contrary, a factual attack challenges " 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered.' " Id. at 1251 (quoting Lawrence, 919 F.2d at 1529).

Under Article III of the United States Constitution, the jurisdiction of federal courts is limited to "cases" and "controversies." Muransky v. Godiva Chocolatier, Inc., 979 F.3d 917, 924 (11th Cir. 2020). A case or controversy exists only if a plaintiff has standing to sue. Id. "For a party to have standing to bring a lawsuit, [he or she] must have '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.' " Id. (quoting Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016); Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992)). To be an "injury in fact," the injury must be both "concrete and particularized." Spokeo, 578 U.S. at 339. "The party invoking federal jurisdiction[] bears the burden of establishing" Article III standing. Lujan, 504 U.S. at 561.

---

former Fifth Circuit handed down prior to the close of business on September 30, 1981.

In sum, to establish standing, "the plaintiff needs to show that the defendant harmed him, and that a court decision can either eliminate the harm or compensate for it." Muransky, 979 F.3d at 924. Because standing is "an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." Lujan, 504 U.S. at 561.

### 2.  *Analysis*

Defendants argue that "Equifax" conducted an extensive investigation which revealed that none of the five remaining originally named Plaintiffs—Maurice Moore, Sarah Hunter, Nathan Raymond, Derrick Rogers, or Benjamin Baker—suffered a concrete injury that is fairly traceable to Equifax or the coding issue. They state that the investigation showed that "the vast majority" of consumers' credit scores did not change due to the coding issue and that a "significant number" of those that were affected in fact increased. Defendants also aver specifically that Equifax did not report any incorrect attributes or negatively affected credit scores regarding Moore, Hunter, Raymond, Rogers, or Baker to any third party.

Defendants contend that as a consequence, the named plaintiffs have not experienced an injury that could give rise to standing. They additionally request that the Court stay all discovery, apart from any limited discovery necessary to resolve the standing question, pending the Court's ruling on the standing issue.

Following careful review of the motions and the subsequent briefing, the Court finds that the motion to dismiss is premature and that there is not good cause for staying discovery.

First, at this early stage of the case, Plaintiffs have presented evidence "in a manner and degree" sufficient to meet their burden of proof. As Defendants tacitly acknowledge, Plaintiffs have presented sworn testimony to facts establishing standing: Defendants do not argue that the Plaintiffs' allegations do not establish standing but rather that the allegations are false. See Dkt. No. [181] at 9-17. Additionally, Defendants' motion to dismiss relies heavily on evidence Plaintiffs contend that Defendants have not produced to them and which, in any event, Plaintiffs should have the opportunity to investigate and challenge in discovery. See Fed. R. Civ. P. 56(d); Jones v. City of Columbus, Ga., 120 F.3d 248, 253 (11th Cir. 1997) ("The law in this circuit is clear: the party opposing a motion for summary judgment should be permitted an adequate opportunity to complete discovery prior to consideration of the motion."). Defendants appear to be cognizant of this point as well, given that they seek to hold Plaintiffs to the evidentiary standard set out in the Federal Rule guiding motions for summary judgment, even though their motion was filed as a motion to dismiss. See Dkt. No. [181] at 18 (citing Fed. R. Civ. P. 56(e)).

Second, while Defendants contend that a discovery stay is warranted because their motion will establish that none of the named plaintiffs have standing and that the case should be dismissed in its entirety, they do not

challenge the standing of any of the named plaintiffs whose cases were consolidated into this action. Even if Moore, Hunter, Raymond, Rogers, and Baker were dismissed from the case, consolidated named plaintiffs Shelly Delinda Steele, Tyler Baker, Anthony Schwartz, Sean Gordon, Brandon Meisner, John Thompson, Megan Govea Thompson, Vincent Leahy, Mark Biddle, Amanda Stovall, Demetice Blassingame, Samuel Peter Mancuso, and Ashlyn Gill, many of whom seek relief for themselves and on a class basis, remain in this case. Thus, even if fully granted, the motion dismiss would not dispose of the action, and Defendants have supplied no reason for staying discovery on the claims of any of the consolidated plaintiffs.

Third, Defendants do not explain what excessive discovery activities would take place absent the stay. Fact discovery closes on July 15, 2024; thus, all requests for discovery should have been served by now. Be that as it may, Defendants do not point to a single request for discovery that they contend should be stayed, nor do they present the Court with any workable format by which it might craft an order that would distinguish "limited discovery necessary to resolve the question of subject matter jurisdiction" from the discovery that they contend should be stayed. The Court fears that without a clear plan this would turn into excessive litigation about what is within and outside the scope of tiered discovery.

While it is within the discretion of the Court to convert the motion to dismiss into a motion for summary judgment, courts generally decline to do so

"at such an early stage in the proceedings and without the benefit of a well-developed record." Sevex N. Am., Inc. v. Ragland, No. 1:06-cv-2005-RWS, 2007 WL 9702302, at *3 (N.D. Ga. Mar. 16, 2007). Thus, the motion to dismiss for lack of subject-matter jurisdiction, Dkt. No. [180], is **DENIED**, pending completion of discovery. And, lacking a showing of good cause or a workable proposal, the motion for stay of discovery, Dkt. No. [184], is also **DENIED**.

### III. CONCLUSION

In accordance with the foregoing, Defendants' motion to certify question for interlocutory appeal, Dkt. No. [127]; motion to dismiss for lack of subject-matter jurisdiction, Dkt. No. [180]; and motion to stay discovery, Dkt. No. [184], are **DENIED**. Plaintiffs' request for a hearing is **DENIED AS MOOT**.

Any further discovery issues should be raised in compliance with the procedure set out in the Court's Standing Order.

**IT IS SO ORDERED** this 21st day of June, 2024.

_____
**Leigh Martin May**
**United States District Judge**