**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **IN RE: EQUIFAX FAIR CREDIT REPORTING ACT LITIGATION** | CIVIL ACTION NO.: 1:22-CV-3072 LMM |

# UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ iii

INTRODUCTION ........ 1

BACKGROUND AND PROCEDURAL HISTORY ........ 2

I. Background of the litigation ........ 2

II. Terms of the proposed Settlement ........ 3

LEGAL STANDARD ........ 4

ARGUMENT ........ 6

I. The Settlement is likely to be approved as fair, reasonable, and adequate ........ 6

A. The Settlement was achieved through arm's-length negotiation by competent and qualified attorneys ........ 6

B. The Settlement provides substantial relief to the Class ........ 8

C. The Settlement treats Class Members equitably ........ 11

D. The *Bennett* Factors Favor Preliminary Approval ........ 11

1. Likelihood of success at trial and complexity of litigation (Factors 1 and 4) ........ 11

2. Range of possible recovery (Factors 2 and 3) ........ 12

3. Opposition to the settlement (Factor 5) ........ 12

4. Stage of proceedings (Factor 6) ........ 12

II. The Court is likely to certify the Settlement Class because the Class meets the requirements of Rule 23(a) and (b)(3) ........ 13

A. The Settlement Class Meets the Requirements of Rule 23(a) ........ 13

1. The Settlement Class is sufficiently numerous ........ 13

2. There are common questions of fact and law. ..........................13

3. The Class Plaintiffs' claims are typical. ..................................14

4. The Class Plaintiffs and Class Counsel are adequate. ..............14

B. The Settlement Class meets the requirements of Rule 23(b)(3). ........15

III. The Court should approve the form and plan for disseminating Notice to the Class Members. ......................................................................16

PROPOSED SCHEDULE.......................................................................17

CONCLUSION ......................................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ....................16

*Bennett v. Behring Corp.*,
737 F.2d 982 (11th Cir. 1984) ....................5

*Camden I Condo. Ass'n, Inc. v. Dunkle*,
946 F.2d 768 (11th Cir. 1991) ....................10

*Cordoba v. DirectTV, LLC*,
942 F.3d 1259 (11th Cir. 2019) ....................15

*Dikeman v. Progressive Exp. Ins. Co.*,
312 F. App'x 168 (11th Cir. 2008) ....................9

*Edwards v. Horizon Staffing, Inc.*,
No. 1:13-cv-3002-WSD, 2015 WL 13283397 (N.D. Ga. Jan. 2, 2015) ....................9

*Garrett v. Experian Info. Sols., Inc.*,
785 F. Supp. 3d 1077 (N.D. Fla. 2025) ....................9

*In re Equifax Inc. Customer Data Sec. Breach Litig.*
999 F.3d 1247 (11th Cir. 2021) ....................4, 5

*Ponzio v. Pinon*,
87 F.4th 487 (11th Cir. 2023) ....................4

*Safeco Ins. Co. of Am. v. Burr*,
551 U.S. 47 (2007) ....................9

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ....................10

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016) ....................15

*Valley Drug Co. v. Geneve Pharms., Inc.*,
350 F.3d 1181 (11th Cir. 2003) ........................................................................14

*Vega v. T-Mobile USA, Inc.*,
564 F.3d 1256 (11th Cir. 2009) ........................................................................13

*Wakefield v. ViSalus, Inc.*,
51 F. 4th 1109 (9th Cir. 2022) ..........................................................................8

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ........................................................................................13

*Williams v. Mohawk Indus., Inc.*,
568 F.3d 1350 (11th Cir. 2009) ........................................................................14

**Rules**

Fed. R. Civ. P. 23 ........................................................................... passim

## INTRODUCTION

Following nearly four years of hard-fought litigation and discovery, and arm's-length settlement negotiations, Plaintiffs Sarah Hunter, Maurice Moore, and Michael Rodela, and Defendants Equifax Information Services LLC and Equifax, Inc. have agreed, subject to this Court's approval, to settle this case on behalf of a proposed class of consumers whose credit scores or attributes were affected by a coding issue that Equifax experienced between March 17, 2022 and April 8, 2022.

The Settlement creates a $100 million common fund—by far the largest class-action settlement ever achieved under the Fair Credit Reporting Act. The Settlement Fund is non-reversionary and will cover all class payments, attorneys' fees, costs, expenses, and notice and administrative costs. *See* Exhibit A (Settlement Agreement).[1]

Considering the substantial monetary benefits of this Settlement and the equitable treatment it affords to all class members, as compared to the risks, expense, and delay of continued litigation, this Settlement is fair, adequate, and reasonable, and merits preliminary approval. At this initial stage, Plaintiffs respectfully ask that this Court: (1) find that it will likely be able to certify the Settlement Class; (2) find that it will likely be able to approve the Settlement; and

1 Unless otherwise specified, capitalized terms used in this motion have the meaning ascribed to them in the Settlement Agreement.

(3) direct that notice be issued to potential Settlement Class Members pursuant to the proposed notice plan. A proposed Order granting this Motion is attached as Exhibit E to the Settlement Agreement.

## BACKGROUND AND PROCEDURAL HISTORY

### I. Background of the litigation.

This case arises from the "OMS Issue"—a coding error in Equifax's systems between March 17, 2022 and April 8, 2022. Dkt. 279-1 ¶¶ 39, 41–42, 56, 66. During that time period, the OMS Issue caused certain credit scores and credit attributes reported by Equifax to third parties to differ from what they would have been. *Id.* ¶ 42. Plaintiffs assert claims under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, and allege, among other things, that Equifax failed to follow reasonable procedures to assure maximum possible accuracy of the information it reported, in violation of 15 U.S.C. § 1681e(b). *Id.* ¶¶ 77–95.

The Parties engaged in extensive discovery and motion practice over the course of four years. *See* Exhibit B (Declaration of Class Counsel). Through this process, Class Counsel developed a thorough understanding of the underlying facts, the strengths and weaknesses of Plaintiffs' claims, and the scope and impact of the OMS Issue (and Equifax's own investigation—the OMS Analysis) on Settlement Class Members. *Id.* ¶¶ 4–5, 11–12.

Following arm's-length negotiations, including two in-person mediations, the Parties ultimately reached agreement on the terms of the Settlement. *Id.* ¶ 15. Plaintiffs now move this Court to direct notice to the Settlement Class under Fed. R. Civ. P. 23(e)(1).

## II. Terms of the proposed Settlement.

The proposed Settlement defines the Settlement Class as:

> All individuals in the United States for whom a credit score or credit attribute that differed from what it would have been absent the OMS Issue, according to the OMS Analysis, was reported by Equifax to a third party in connection with a Class Transaction.

Excluded from the Settlement Class are Equifax, its affiliates, employees, officers, directors, and the judge(s) assigned to this case. Exhibit A § III.A.

The Settlement creates a non-reversionary $100 million Settlement Fund to be distributed to claiming Settlement Class Members and to pay attorneys' fees, costs, expenses, and notice and administrative costs. *See* Exhibit A § IV. Settlement Class Members who submit a valid Claim Form by the Claim Deadline (90 calendar days after the Notice Date) will receive a *pro rata* share of the Net Settlement Distribution Amount—i.e., the Settlement Fund less attorneys' fees, costs, expenses, and notice and administrative costs. *Id.* § IV.B. In exchange for the Settlement consideration, Settlement Class Members who do not opt out will release all claims arising from the OMS Issue, including a waiver of claims under state consumer protection statutes. *Id.* § VI.

## LEGAL STANDARD

"A class action may be settled only with court approval . . . ." *In re Equifax Inc. Customer Data Sec. Breach Litig.* ("*In re Equifax Data Breach*"), 999 F.3d 1247, 1273 (11th Cir. 2021). This Motion addresses the first stage of the approval process: the decision to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). The Court "must direct notice" upon finding that "the court will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *Id*. The Court must also find that the proposed notice plan satisfies the requirements of Rule 23(c)(2)(B) and due process. *See In re Equifax Data Breach*, 999 F.3d at 1273.

To determine whether it will be likely be able to approve the settlement, the Court considers whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate; and (D) the proposal treats class members equitably relative to each other. *Ponzio v. Pinon*, 87 F.4th 487, 495 (11th Cir. 2023). Before the 2018 amendments to Rule 23, courts in this Circuit considered the factors enumerated in *Bennett v. Behring Corp.*, 737 F.2d 982, 986

(11th Cir. 1984).[2] The "four core concerns set out in Rule 23(e)(2) provide the primary considerations in evaluating proposed agreements," but "the *Bennett* factors can, where appropriate, complement those core concerns." *Ponzio*, 87 F.4th at 495.

For the Court to find it is likely to certify the Settlement Class, the four prerequisites of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—must be met. *See In re Equifax Data Breach*, 999 F.3d at at 1274–75. "In addition to meeting these four requirements, a class action must also satisfy one of the three parts of Rule 23(b)." *Id.* Under Rule 23(b)(3), applicable here, the court considers whether common questions of law or fact predominate and whether a class action is the superior method for adjudicating the controversy.

[2] The *Bennett* factors are: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below that range at which the settlement is fair, adequate, and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." 737 F.2d at 986.

# ARGUMENT

## I. The Settlement is likely to be approved as fair, reasonable, and adequate.

### A. The Settlement was achieved through arm's-length negotiation by competent and qualified attorneys.

Under Rule 23(e)(2)(A) and (B), the Court considers whether "the class representatives and class counsel have adequately represented the class" and whether "the proposal was negotiated at arm's length." Both requirements are met.

Class Counsel prosecuted this Action vigorously over the course of almost four years, conducting substantial discovery and motion practice before ultimately engaging in successful settlement negotiations. *See* Exhibit B ¶¶ 4–5. Class Counsel reviewed over three million pages of documents produced by Defendants, took sixteen depositions, reviewed over twenty thousand pages of documents produced by third parties, participated in dozens of meet and confer discussions, reviewed thousands of Plaintiffs' documents and produced over five thousand pages of them, defended Plaintiffs' depositions, produced an expert report and defended the deposition of that expert, reviewed two expert reports from Equifax, and were on the eve of deposing those experts when the case settled. *Id.* ¶¶ 4–8. Plaintiffs also responded to Equifax's motion to dismiss, motion to certify the case for interlocutory appeal, motion suggesting lack of subject matter jurisdiction, and

had already prepared their class certification motion and expert report prior to engaging in settlement negotiations. *Id.*

The Settlement was reached through extensive, arm's-length negotiations between experienced counsel on both sides—first, in a mediation before Robert Meyer earlier in the litigation, and then through a successful mediation before Fouad Kurdi and subsequent discussions. *Id.* ¶ 15. *See* Fed. R. Civ. P. 23 advisory committee's note to 2018 amendments ("[T]he involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests.").

Plaintiffs were fully informed of the merits of the claims in this case, having performed extensive discovery, having prepared their brief and expert report in support of class certification. Exhibit B ¶¶ 8, 23 (describing risks of the litigation). After litigating the case for over three and a half years, in March 2026, Plaintiffs provided notice to Defendants that Plaintiffs intended to file their class certification motion (well in advance of the October 2026 deadline, as permitted by the case management schedule), and the Parties worked to prepare a schedule allowing them to complete expert discovery before the parties filed their briefs. *See* Exhibit B ¶ 7; dkt. 345 at 1–2. Plaintiffs finalized and served their expert report, defended an expert deposition, and were on the eve of deposing Defendants' experts after

receipt of their reports when the proposed Settlement was reached. *See, e.g.*, dkts. 346, 349, 351, 353, 354; Exhibit B ¶ 8.

**B. The Settlement provides substantial relief to the Class.**

Under Rule 23(e)(2)(C), the Court evaluates the adequacy of the relief to the Class, taking into account (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed method of distributing relief; (iii) the terms of the proposed award of attorneys' fees; and (iv) the absence of undisclosed side agreements. Each factor supports preliminary approval here.

The $100 million Settlement Fund represents substantial relief for the Settlement Class and is, to Class Counsel's knowledge, the largest FCRA settlement ever achieved. The Settlement avoids the significant costs, risks, and delays of further litigation and appeals. Equifax contends, for example, that any verdict for willful conduct would result in damages that are unconstitutional and a violation of due process. Dkt. 288 at 27. *See Wakefield v. ViSalus, Inc.*, 51 F. 4th 1109, 1121 (9th Cir. 2022) (noting that due process may limit aggregate statutory damages). Equifax also contended that individualized issues concerning whether transmission of data constituted a "consumer report" sufficient to trigger liability would prevent class certification. *See* dkt. 288 at 25–26. And Article III standing challenges loomed as well, in that Equifax (incorrectly, in Plaintiffs' view) contended that only individuals whose data was "read and relied on" by third

parties have standing. *See* Exhibit B ¶ 23. An adverse ruling on that issue, whether from this Court or an appellate court, would create significant risk to class certification (and the claims here are too small to be pursued without the class device).

There are substantial risks on the merits as well. To recover statutory damages, Plaintiffs must show that Equifax acted willfully, *i.e.*, recklessly. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 56 (2007). Plaintiffs could prove the merits of every single class member's FCRA claim, prove that Equifax was irresponsible in causing that harm, and nevertheless recover nothing if the jury were to conclude that Equifax had tried hard enough. *See Dikeman v. Progressive Exp. Ins. Co.*, 312 F. App'x 168, 171 (11th Cir. 2008) (finding that district court did not abuse its discretion in approving settlement agreement, where "'willfulness' on the part of [defendant] is seriously debatable and the agreed to settlement reflects that uncertainty"); *Edwards v. Horizon Staffing, Inc.*, No. 1:13-cv-3002-WSD, 2015 WL 13283397, at *6 (N.D. Ga. Jan. 2, 2015) (noting, in FCRA litigation, that plaintiffs had a "reasonable chance of success at trial," but that they faced "significant risks" in demonstrating "willful" violations of FCRA, "a fact-intensive inquiry"); *Garrett v. Experian Info. Sols., Inc.*, 785 F. Supp. 3d 1077, 1084 (N.D. Fla. 2025) ("The question is not whether Experian knew this type of error was possible; it is whether Experian knowingly violated the statute.

And there is no evidence of that. Indeed, the undisputed evidence is that when notified of the combined file, Experian promptly fixed it.”).

Delay, too, is no small matter. Any appeals—whether from class certification, the trial outcome, or final judgment—would inevitably delay resolution by several years. For example, in *TransUnion LLC v. Ramirez*, 594 U.S. 413, 442 (2021), the Supreme Court reversed in significant part judgment in a class trial completed four years earlier concerning conduct that occurred ten years earlier. And, of course, trial always poses inherent risks and uncertainty.

As to the effectiveness of the proposed method of distributing relief, the claims process is simple: Settlement Class Members need only submit a one-page Claim Form by the Claim Deadline to receive a pro rata payment from the Net Settlement Distribution Amount. This straightforward process ensures that relief will be distributed effectively, equitably, and efficiently. *See* Exhibit B ¶ 22 (noting that the distribution plan was designed to reduce administrative costs and maximize Settlement Class Member recovery).

With respect to attorneys’ fees, Class Counsel will separately move for fees, costs, and expenses paid from the Settlement Fund. The fee request will be based on the percentage of the fund approach required in this Circuit. *See Camden I Condo. Ass’n, Inc. v. Dunkle*, 946 F.2d 768, 775 (11th Cir. 1991). And there are no undisclosed side agreements between the Parties. *See* Fed. R. Civ. P. 23(e)(3).

### C. The Settlement treats Class Members equitably.

Under Rule 23(e)(2)(D), the Court considers whether the proposal "treats class members equitably relative to each other." Here, all Settlement Class Members with valid claims will receive the same treatment—a pro rata share of the Net Settlement Distribution Amount. This equitable distribution ensures that no class member is treated more favorably than any other and is tied to the statutory damages which Class Members could achieve through litigation of their claims. The process is designed to ensure that the majority of class relief goes to the Settlement Class Members, minimizing spend on a complex and time-consuming claims process and instead focusing on getting relief into the hands of Settlement Class Members quickly and efficiently.

### D. The *Bennett* Factors Favor Preliminary Approval.

The *Bennett* factors also support preliminary approval.

#### 1. Likelihood of success at trial and complexity of litigation (Factors 1 and 4).

As discussed above, while Plaintiffs believe their claims are strong, FCRA litigation involves inherent uncertainties, including whether Equifax acted "willfully," and whether statutory damages would be available to each class member, in addition to the risks on appeal. Continued litigation would be expensive, time-consuming, and uncertain in its outcome. By contrast, the Settlement provides guaranteed, substantial relief now.

**2. Range of possible recovery (Factors 2 and 3).**

The $100 million Settlement Fund is well within the range of possible recovery for the class. Although the theoretical statutory-damages exposure could be substantial if Plaintiffs certified a class, established a willful violation, prevailed at trial, and sustained the resulting award on appeal, Plaintiffs also faced meaningful risks concerning class certification, standing, proof of willfulness, whether each reported variance constituted a legally actionable inaccuracy, and constitutional review of any aggregate statutory award. Given the risks of continued litigation and the potential for reduced or zero recovery at trial or through subsequent appeals, the Settlement amount is fair, adequate, and reasonable.

**3. Opposition to the settlement (Factor 5).**

As this is the preliminary approval stage, there has been no opportunity for class members to object. Plaintiffs will address this factor on reply, after the objections deadline.

**4. Stage of proceedings (Factor 6).**

As noted, this Settlement was reached at a stage when Class Counsel had a deep understanding of the facts, the law, and the strengths and weaknesses of the claims. Class Counsel conducted substantial discovery and motion practice before entering settlement negotiations, and the Parties had conducted expert discovery,

ensuring that the Settlement is grounded in a thorough understanding of the case. This factor favors approval. Exhibit B ¶ 8 (noting that Class Counsel had fully developed their arguments and briefing in support of class certification when the Parties agreed to settle).

## II. The Court is likely to certify the Settlement Class because the Class meets the requirements of Rule 23(a) and (b)(3).

### A. The Settlement Class Meets the Requirements of Rule 23(a).

#### 1. The Settlement Class is sufficiently numerous.

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." The Settlement Class here consists of a nationwide class of individuals whose credit information was affected by the OMS Issue during a period spanning approximately three weeks. The Settlement Class consists of approximately four million individuals. *See* Exhibit B ¶ 12; *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009) ("more than forty is adequate") (citation modified).

#### 2. There are common questions of fact and law.

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." A common question is one susceptible to generalized proof that goes to an important issue in the litigation. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Common questions permeate this litigation, including whether Equifax's procedures were reasonable, whether the OMS Issue caused inaccurate

credit scores and attributes to be reported, and whether Equifax's conduct violated the FCRA. These common questions are capable of generating common answers and are sufficient to satisfy Rule 23(a)(2).

**3. The Class Plaintiffs' claims are typical.**

Rule 23(a)(3) requires that the claims of the representative parties be "typical of the claims . . . of the class." The Class Plaintiffs—Sarah Hunter, Maurice Moore, and Michael Rodela—are all individuals whose credit scores or attributes were affected by the OMS Issue and reported to third parties. Exhibit B ¶ 18. Their claims arise from the same conduct by Equifax and the same legal theories as those of all other Settlement Class Members. *See Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1356–57 (11th Cir. 2009). The typicality requirement is therefore satisfied.

**4. The Class Plaintiffs and Class Counsel are adequate.**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." The Class Plaintiffs have no conflicts of interest with the Settlement Class and have actively participated in this litigation. *See, e.g.*, Exhibit B ¶¶ 18–19. *See Valley Drug Co. v. Geneve Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003). As the attached resumes demonstrate, Class Counsel—Caplan Cobb LLC, DiCello Levitt LLP, Gibbs Mura LLP, and Girard Sharp LLP—are highly experienced in complex class action litigation,

consumer protection, and FCRA claims. *See* Fed. R. Civ. P. 23(g); Exhibits C, D, E, and F. The adequacy requirement is therefore satisfied.

**B. The Settlement Class meets the requirements of Rule 23(b)(3).**

Under Rule 23(b)(3), the Court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

Predominance is satisfied here because the central questions in this case—whether the OMS Issue caused inaccurate information to be reported and whether Equifax's procedures were unreasonable—are common to all class members. *See Cordoba v. DirectTV, LLC*, 942 F.3d 1259, 1274 (11th Cir. 2019) (predominance satisfied where common questions "have a direct impact on every class member's effort to establish liability") (citation modified); *see also Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) ("The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.") (citation modified).

Superiority is likewise satisfied. Given the large number of class members, the relatively modest individual claims, and the efficiency of resolving these claims in a single proceeding, a class action is the superior method for adjudicating

this controversy. Moreover, because this is a settlement class, "a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (citation modified).

## III. The Court should approve the form and plan for disseminating Notice to the Class Members.

Under Rule 23(c)(2)(B), class notice must be "the best notice that is practicable under the circumstances."

The Parties' proposed notice plan—a direct notice campaign—readily satisfies these requirements. The Settlement Class Notice Program includes: (1) Emailed Class Notice to Settlement Class Members for whom email addresses are available and (2) Mailed Class Notice to Settlement Class Members for whom email addresses are not available, but physical addresses are. Based upon the Settlement Administrator's estimates, these two forms of notice together should reach nearly 100% of the proposed Settlement Class. Ex. B ¶ 21. As the Class List will be provided by Equifax, the direct notice campaign here is likely to be particularly successful in reaching Settlement Class Members. This multi-faceted approach is designed to reach the maximum number of Settlement Class Members and to provide them with all information necessary to make an informed decision regarding participation in, objection to, or exclusion from the Settlement.

The proposed notices inform Settlement Class Members of: the nature of this case; the terms of the proposed Settlement; how to make a claim for Settlement benefits; how to object to the Settlement or opt out of the Settlement Class; the attorneys' fee provision; the date and location of the Fairness Hearing; and how Settlement Class Members can obtain additional information about the Settlement; among other things. The notices satisfy the requirements of Rule 23 and due process.

**PROPOSED SCHEDULE**

Plaintiffs respectfully request that this Court set the following proposed schedule for disseminating notice and holding a final approval hearing:

| Event | Deadline |
|---|---|
| CAFA Notice mailed to federal and state officials | 10 calendar days after the Motion for Preliminary Approval is filed |
| Settlement Website publicly available | 28 days after entry of Preliminary Approval Order |
| Class Notice mailed or emailed (the "Notice Date") | 42 days after entry of Preliminary Approval Order |
| Last day for Class Counsel to file Motion for Attorneys' Fees, Costs, and Expenses | 21 days prior to Objection Deadline |
| Reminder Notice sent to class members who have not submitted a Claim Form | 60 days after the Notice Date |
| Objection Deadline / Opt-Out Deadline | 60 calendar days after the Notice Date |
| Settlement Administrator provides final Opt-Out List to counsel | 7 days after the Opt-Out Deadline |

| | |
|---|---|
| Opt-Out List filed with the Court | 5 days after receipt of the Opt-Out List |
| Claim Deadline | 90 calendar days after the Notice Date |
| Notice of intention to appear filed by objecting counsel | 14 calendar days before the Fairness Hearing |
| Responses to objections filed | 14 calendar days before the Fairness Hearing |
| Fairness Hearing | [DATE] (at least 150 days after entry of Preliminary Approval Order) |

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that this Court preliminarily certify the Settlement Class, approve the proposed Settlement, direct that notice be issued to potential Settlement Class Members, and enter the Order attached as Exhibit E to the Settlement Agreement.

[signature on following page]

Respectfully submitted this 12th day of August, 2026.

*/s/ Michael A. Caplan*
Michael A. Caplan
**CAPLAN COBB LLC**
75 Fourteenth Street, Suite 2700
Atlanta, Georgia 30309
(404) 596-5600
mcaplan@caplancobb.com

Amy Keller
**DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
akeller@dicellolevitt.com

David M. Berger
**GIBBS MURA LLP**
1111 Broadway, Suite 2100
Oakland, California 94607
dmb@classlawgroup.com

Dena C. Sharp
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, California 94108
dsharp@girardsharp.com

*Class Counsel*

## LOCAL RULE 7.1(D) CERTIFICATION

The undersigned counsel certifies that the foregoing document has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(B): Times New Roman, 14-point font.

This 12th day of August, 2026.

*/s/ Michael A. Caplan*
Michael A. Caplan
**CAPLAN COBB LLC**
75 Fourteenth Street, Suite 2700
Atlanta, Georgia 30309
(404) 596-5600
mcaplan@caplancobb.com

*Class Counsel*

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I caused a true and correct copy of the foregoing document to be filed with the clerk's office by this Court's CM/ECF system, which will serve a true and correct copy of the same upon all counsel of record.

This 12th day of August, 2026.

*/s/ Michael A. Caplan*
Michael A. Caplan

*Class Counsel*